IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JANICE TIMMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:14-cv-04006-NKL |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. | |

**ORDER**

Janice Timmons appeals the Commissioner of Social Security's final decision denying her application for disability insurance benefits and supplemental security income. 42 U.S.C. §§ 401, *et seq.,* and 1381, *et seq*. The Commissioner's decision is affirmed.

**I.  Background**

Timmons was born in 1961. She has past experience as a fast food worker, but the majority of her employment, 23 years, has been as a licensed practical nurse. She last worked full-time as an LPN about three or four years ago, and currently works part-time as an LPN in a nursing home, every other weekend. She alleges February 26, 2011 as the onset date of her disability.

Timmons saw her primary care physician, Thomas Hopkins, M.D., 14 times from September 2008 to February 2010. Dr. Hopkins' diagnoses included left shoulder pain, hypertension, low back pain after a failed 2002 surgery, chronic pain with medication

management, history of siezures, and irritable bowel syndrome, and prescribed various medications. In December 2009, he completed a statement indicating Timmons could return to work or school with no limitations. Tr. 269.

In November 2009, Timmons was seen in a specialty clinic, reporting pain everywhere. Leslie Hammett, M.D. diagnosed uncontrolled hypertension and chronic pain. Tr. 334.

Timmons saw Taylor Bear, M.D. in February 2010 due to a seizure. Dr. Bear noted some difficulty with movement of her left shoulder, and changed her seizure medication. Tr. 441.

Timmons saw Robert Lieurance, M.D. in March 2010 for left shoulder pain. After an x-ray and MRI, Dr. Leiurance administered an injection. Tr. 306. He continued to treat her left shoulder from May 2010 to August 2010, referring her for physical therapy and then for surgical repair. In August 2010, Dr. Lieurance gave Timmons a return-to-work slip and recommended continued exercises.

In May 2010, Timmons also saw Robert Kenney, D.O., whose examination showed tenderness of both shoulders, restricted lumbar spine motion, and knee tenderness. In June 2010, Timmons saw Dr. Kenney again, for fibromyalgia and degenerative pain.

Timmons had an overnight hospital stay in September 2010, following an episode of symptomatic bradychardia. At discharge, the attending physician diagnosed it as resolved, most likely related to medications and possible occult thyroid disease.

Timmons went to a hospital emergency room in November 2010 for dizziness and

high blood pressure. A chest x-ray revealed no acute abnormality.

Timmons had a bilateral carotid Doppler sonogram in April 2011, revealing severe, or 60-79 percent, bilateral stenosis. A carotid duplex study performed in May 2011 revealed plaque formation and 40 to 50 percent stenosis bilaterally, and Dr. Raymond Vetsch recommended continued monitoring.

Timmons went to the emergency room in August 2011 for chest pressure and headache lasting two days. A CT scan of the head revealed no abnormality, and the attending physician diagnosed headaches, chest pain and renal insufficiency.

In August 2011, S. Subramanian, M.D. conducted a consultative examination. The doctor found Timmons' range of motion within normal limits in the shoulders, elbows, wrists, knee, hip, and lumbar and cervical spine. Although there was a slight reduction in straight leg raising, the doctor found normal strength in the upper and lower extremities and in grip. Timmons' cranial nerves were intact, and she could ambulate with normal gait and without the use of an assistive device. Dr. Subramanian diagnosed hypertension on medication, chronic obstructive airway disease, tobacco abuse, chronic back pain secondary to lumbosacral disease, history of carpal tunnel syndrome, chronic anxiety and depression. The doctor opined that Timmons had no disability in sitting, standing, handling objects, hearing, speaking, or traveling. He opined that she might have some limitation in lifting, carrying, or walking long distances. Tr. 704. The ALJ afforded Dr. Subramanian's opinion substantial weight.

Elissa Lewis, Ph.D. completed a psychiatric review technique form in August 2011. Dr. Lewis opined that Timmons has a mild limitation in maintaining

concentration, persistence, or pace. Tr. 715.

In January 2012, Timmons was treated at a hospital for an episode of acute renal failure. Her records indicated she had a history of provoked seizure activity, likely associated with high blood pressure. A CT of the brain was negative for acute hemorrhage or malignancy. She was started on a course of Dilantin. At a follow-up neurology appointment with Ahmed Robbie, M.D. in February 2012, Timmons reported that her seizures were well-controlled with the Dilantin, and her blood pressure was controlled with metoprolol. Dr. Robbie noted no acute distress on physical examination, and Timmons' reflexes, sensation and coordination were all normal. Dr. Robbie opined that Timmons' seizures were likely induced by Percocet and morphine, and advised her to reduce the use of narcotic medications.

Timmons saw Dr. Hopkins 33 times from February 2010 to September 2012. He treated her for renal insufficiency, dizziness, chronic pain, hypertension, carotid artery stenosis, headaches, right shoulder strain, depression, fibromyalgia, obesity, elevated liver enzymes, hypocalcemia, anemia, and lower extremity swelling. He prescribed medications. In February 2011, Timmons requested and was given a note allowing her to go back to work with no restrictions. In September 2012, Dr. Hopkins completed a Medical Source Statement—Physical (MSSP). Dr. Hopkins opined the following limitations:

- Lift and/or carry less than five pounds frequently and five pounds occasionally;
- Stand and/or walk for less than 15 minutes continuously and for less than one hours throughout an eight-hour day;

4

- Sit less than 15 minutes continuously and less than one hour in an eight-hour day;
- Limited push and/or pull;
- Never climb, balance, stoop, kneel, crouch, crawl, reach, and handle;
- Avoid any exposure to extreme cold, extreme heat, weather, wetness, humidity, dust, fumes, vibration, hazards, and heights; and
- Due to pain, she would need to lie down or recline to alleviate symptoms and her medications would cause limitations.

Tr. 826-27. The ALJ afforded Dr. Hopkins' opinion little weight.

A few days after preparing the MSSP, Trina Larery, a certified family nurse practitioner who works with Dr. Hopkins, completed a Physician's Statement for Disabled License Plates for Timmons. Ms. Larery indicated Timmons could not walk 50 feet without stopping to rest and was permanently disabled. The ALJ afforded the determination little weight.

Timmons testified at the hearing before the ALJ. She said her full-time LPN job ended because of her pain. Her back pain is her biggest problem. She can only walk for a few minutes before she needs to take a break, and walking even one quarter of a block is too painful, but she must move constantly because of pain and spasms. She cannot stand for more than ten or fifteen minutes, or lift more than ten pounds. She has pain in her shoulders, and the left one is worse. Pain in her legs and knees worsens with walking and standing for a long time. Stooping and bending aggravate her leg and knee pain. She has headaches almost every day due to high blood pressure. She takes care of her 14-year old daughter who lives with her, manages her personal care, does laundry and folds clothes, prepares meals daily, grocery shops once or twice a week, goes to the pharmacy,

5

goes to her daughter's volleyball games, manages her finances, and watches television and reads. Timmons drives a car, and drove herself to the hearing, a 40-minute trip, with no reported difficulty. Tr. 38-52. As noted, she works every other weekend.

The ALJ found that Timmons' part-time work was not substantial gainful activity, and that she had severe impairments of degenerative changes of the left shoulder, status post-surgery; hypertension; degenerative changes of the lumbar spine, status post-surgery; chronic pain syndrome; fibromyalgia; arthralgia of both knees; and seizures. The ALJ acknowledged Timmons' additional allegations concerning carotid stenosis, episodes of renal failure, irritable bowel syndrome, degenerative changes of the right shoulder, headaches, and obesity, but concluded the conditions were not severe and that there were no functional limitations.

The ALJ determined that Timmons could perform a range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), or work requiring lifting, carrying or both, of 20 pounds occasionally and 10 pounds frequently; standing, walking or both, for six hours in an eight-hour workday; and sitting six hours in an eight-hour workday, with the option to sit for 30 minutes and then stand for 30 minutes as needed. The ALJ further determined that Timmons could occasionally stoop, crouch, crawl, and climb ramps and stairs; occasionally reach overhead with the upper left non-dominant extremity; and must avoid concentrated exposure to dangerous machinery and unprotected heights, cold temperature extremes. Tr. 20.

Although Timmons could not perform any of her past work, the ALJ found she could perform other work as an office helper (DOT # 239.567-010), electrical sub-

6

Case 2:14-cv-04006-NKL   Document 11   Filed 09/25/14   Page 6 of 11

assembler (DOT # 729.684-054), and marker (DOT # 209.587-034), jobs existing in significant numbers in the national economy. Tr. 26-27.

## II. Discussion

Review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence on the record as a whole. *Finch v. Astrue,* 547 F.3d 993, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008). Evidence that both supports and detracts from the Commissioner's decision should be considered, and an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Finch*, 547 F.3d at 935.

Timmons argues that the decision must be reversed because the ALJ did not afford controlling weight to the opinion of Dr. Hopkins, her primary care physician, and because the ALJ's RFC finding is not based on "some" medical evidence.

### A. The weight afforded to Dr. Hopkins' opinion

An ALJ decides how much weight to afford each medical opinion. *See Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) ("It [is] the ALJ's task to resolve conflicts in the evidence."). As a general rule, a treating source opinions may be accorded controlling weight if it is well-supported by clinical findings and are not inconsistent with the evidence as a whole. 20 C.F.R. §§ 404.1527, 416.927. A treating physician's opinion "does not automatically control in the face of other credible evidence on the record that detracts from" it. *Brown v. Astrue,* 611 F.3d 941, 951 (8th Cir. 2010). An ALJ

7

may also give less weight to a treating physician's opinion when based largely on a claimant's subjective complaints rather than objective medical evidence, *Kirby v. Astrue,* 500 F.3d 705, 709 (8th Cir. 2007), or discount it if conclusory and lacking citation to medical evidence, *Strongson v. Barnhart*, 361 F.3d 1066, 1070-71 (8th Cir. 2004).

Here, the physical limitations Dr. Hopkins set out in the MSSP were extreme and unsupported by the record. Dr. Hopkins indicated Timmons could stand or walk no more than one hour in an eight-hour work day, but the limitation was inconsistent with Timmons' reported activities, including working part-time as an LPN. Dr. Hopkins restricted Timmons from any reaching, but objective findings showed she had full strength in her upper extremities. The ALJ also noted that Dr. Hopkins' treatment records did not describe functional limitations that would support the extreme limitations he recommended. Dr. Hopkins' records often showed visits for routine matters and Timmons' visits frequently related to medication refill follow-ups. *See* Tr. 25, 266-303, 537-61, 786-814, and 831-38.

The ALJ also found Dr. Timmons' limitations to be based largely on Timmons' subjective reports of pain—reports the ALJ found not fully credible. Tr. 21. Timmons had left shoulder surgery in June 2010. In follow up in August 2010, her left shoulder was minimally tender to palpation, she had good cuff strength, and good range of motion. Dr. Lieurance noted that she was doing well, released her to return to work, and told her to continue exercises. The ALJ noted little indication in records from Timmons' health care providers that she reported being unable to stand very long due to pain. She was not prescribed any assistive devices. Her physical examinations were generally within

8

Case 2:14-cv-04006-NKL   Document 11   Filed 09/25/14   Page 8 of 11

normal limits.

It was also appropriate for the ALJ to consider Timmons' part-time work as an LPN. *See Goff v. Barnhart,* 421 F.3d 785, 792 (8th Cir. 2005) (ALJ properly considered evidence of claimant's part-time work as kitchen helper as evidence that claimant was not disabled). Although not qualifying as substantial gainful activity, the ALJ concluded the part-time work did undercut Timmons' allegation that she had been completely disabled since her alleged disability onset date.

Timmons' function report submitted near the time she filed her claims also reflects activities inconsistent with her claim of total disability, including caring for her daughter, managing personal care, doing laundry, preparing meals daily, driving, and grocery shopping once or twice a week. Although Timmons testified she could not sit very long, she stated in the report that she spent time during the day doing sedentary activities—watching television and reading, and she testified that she drove 40 miles to attend the hearing, with no reported difficulty. It was appropriate for the ALJ to consider such evidence as detracting from Timmons' claim. *See Medhaug v. Astrue,* 578 F.3d 805, 817 (8th Cir. 2008 ) (ALJ did not err in finding claimant's daily living activities inconsistent with disability).

There is substantial evidence to support the ALJ's decision to give Dr. Hopkins' opinion little weight.

### B. Formulation of the RFC

Timmons argues that the ALJ's RFC finding is not supported by substantial evidence and fails to provide a narrative discussion describing how the evidence supports

9

each conclusion, citing specific medical and nonmedical evidence, in accordance with SSR 96-8p. Doc. 7, p. 16. Timmons points out that although the ALJ placed substantial weight on Dr. Subramanian's opinion, the ALJ imposed restrictions that the doctor did not, and argues that the doctor's opinion was vague and could not be relied on. *Id.*

The RFC need not precisely mirror any particular medical opinion. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Further, while an RFC must be based on some medical evidence, that is, medical records and observations, it is not based solely on medical evidence. *Cox v. Astrue,* 495 F.3d 614, 619 (8th Cir. 2007); *Singh v. Apfel,* 222 F.3d 448, 450 (8th Cir. 2000); and 20 C.F.R. §§ 404.1512(B)(1), 404.1513(b), 404.1528(b)-(c), 416.912(b)(1), 416.913(b), and 416.928(b)-(c). The RFC must be based on all relevant, credible evidence of record. *Cox,* 495 F.3d at 619.

Here, the ALJ cited and considered Timmons' medical treatment records, the medical opinion evidence, and Timmons' subjective allegations. Tr. 16-26. The ALJ found that due to her complaints of pain, the record supported the conclusion that Timmons was limited to light exertional work and, to prevent exacerbation of pain, precluded her from work requiring more than occasional stooping, crouching, crawling, and climbing of ramps or stairs. The ALJ accounted for Timmons' history of shoulder repair by reducing the RFC to allow for no more than occasional overhead reaching with the upper left non-dominant extremity. Tr. 26.

While it is true that Dr. Subramanian did not specifically opine that Timmons was limited to light exertional level work or that she required a sit-stand option, the ALJ's limitation of Timmons' RFC in those respects reflected his consideration of her

10

subjective allegations and was consistent with the overall record. Tr. 16-26.

Substantial evidence supports the ALJ's finding that Timmons retained the RFC for a reduced range of light exertional work.

## III. Conclusion

The Commissioner's decision is affirmed.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: September 25, 2014  
Jefferson City, Missouri